# In the United States Court of Federal Claims

No. 18-1100C
(Filed Under Seal: November 1, 2018)
(Reissued for Publication: November 16, 2018)*

```
*************************************
METRICA TEAM VENTURE,            *
                                 *
              Plaintiff,         *
                                 *   Postaward Bid Protest; RCFC 52.1; Cross-
v.                               *   Motions for Judgment on the
                                 *   Administrative Record; Motion to
                                 *   Supplement the Administrative Record
THE UNITED STATES,               *
                                 *
              Defendant.         *
*************************************
```

William A. Shook, Washington, DC, for plaintiff.

Antonia R. Soares, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

In this postaward bid protest, plaintiff Metrica Team Venture ("MTV")—a joint venture—alleges that the contracting officer ("CO") improperly evaluated its proposal in connection with a solicitation issued by the United States General Services Administration ("GSA") for information technology services by deducting the points MTV claimed for having an acceptable cost accounting system ("CAS"). MTV asserts that it was entitled to those points because it proposed that one of its members, which possessed an acceptable CAS, would perform all of MTV's accounting under the contract. The court is now presented with MTV's motion to supplement the administrative record, MTV's motion for judgment on the administrative record, and defendant's cross-motion for judgment on the administrative record. For the reasons explained below, the court grants defendant's motion and denies MTV's motions.

---

\* The court initially issued this Opinion and Order under seal with instructions for the parties to propose any redactions. The parties informed the court that no redactions were necessary to the substance of the Opinion and Order.

# I. BACKGROUND

## A. Solicitation

On June 20, 2016, the GSA issued solicitation QTA0016GBA0002 to procure information technology services for the government. Administrative R. ("AR") 4, 14. Specifically, the GSA sought proposals for the Alliant 2 Small Business Governmentwide Acquisition Contract, a multiple-award, indefinite-delivery, indefinite-quantity contract. Id. at 270. An awardee under the solicitation would become eligible to receive task orders performed under the contract. Id. at 262-63. The GSA specified that proposals were due by October 7, 2016. Id. at 258.

### 1. Proposal Format and Contents

The GSA required that offerors submit their proposals in seven volumes: volume 1 – General; volume 2 – Relevant Experience; volume 3 – Past Performance; volume 4 – Systems, Certifications, and Clearances; volume 5 – Organizational Risk Assessment; volume 6 – Cost-Price; and volume 7 – Responsibility. Id. at 365. Within the general volume, offerors were required to include, among other items, a completed copy of the Document Verification and Self Scoring Worksheet ("Scoring Worksheet"). Id. The GSA also instructed offerors to submit a paper copy of the completed Scoring Worksheet. Id. In the Scoring Worksheet, offerors were required to claim points for meeting specific criteria in the solicitation. See id. at 372-73.

For every claimed point, offerors were required to include supporting documentation in the appropriate volume of the proposal. Id. at 366-72. The GSA also set forth specific substantiation rules for points claimed by joint-venture offerors. Id. at 375. Indeed, with respect to volumes 2 through 5,[1] the GSA required joint-venture offerors to submit

- "[r]elevant experience projects . . . in the name of the joint venture or in the name of an individual member of the joint venture," id. (volume 2);

- "[p]ast performance examples . . . in the name of the joint venture or in the name of an individual member of the joint venture," id. (volume 3);

- "evidence of the system, certification, or clearance being in the name of the joint venture or in the name of every member of the joint venture," id. (volume 4); and

- "[r]isk assessment elements . . . for the submitted proposal as a whole," id. (volume 5).

---

[1] In the other volumes, the GSA requested materials that were not related to substantiating the claimed points. See AR 225-26.

This protest concerns the 5500 points available to offerors who claimed a certified CAS and submitted the materials requested in volume 4. To receive those points, offerors were required to

> provide verification from the Defense Contract Audit Agency ["DCAA"], Defense Contract Management Agency, or any Cognizant Federal Agency of an acceptable accounting system that has been audited and determined adequate for determining costs applicable to the contract or order in accordance with [Federal Acquisition Regulation ("FAR")] 16.301-3(a)(3).

Id. at 392. Moreover, pursuant to the specific rules applicable to joint ventures, a joint-venture offeror's verification was required to be "in the name of the joint venture or in the name of every member of the joint venture." Id. at 375.

### 2. Evaluation Process

The GSA stated that awardees would be selected based on which offerors presented the highest technically rated proposals with a fair and reasonable price. Id. at 402. For evaluating proposals, the GSA set forth a step-by-step review process for each proposal. This process consisted of the following steps, which the CO was required to perform in the order noted below:

- Step One: The CO preliminarily identifies the top eighty proposals by sorting all of the submissions from the highest score to the lowest score based on the offerors' Scoring Worksheets. Id. at 402-03. The CO then reviews the top eighty proposals in accordance with the following steps.

- Step Two: For each proposal, the CO verifies that a support document exists for all of the evaluation elements included on the Scoring Worksheet. Id. at 403. Any discrepancies at this stage are treated as clarifications. Id.

- Step Three: The CO conducts an acceptability review to determine whether each offeror submitted all of the requested information for the general volume in the specified manner. Id. If a proposal does not pass the review, the proposal is replaced by the next highest scoring proposal that passes the acceptability review. Id.

- Step Four: The CO determines whether a support document substantiates every claimed point on the Scoring Worksheet. Id. If the claimed points are not substantiated, then (1) those points are deducted, (2) the proposals are resorted based on the revised score, and (3) the proposal is replaced if its new score is below the cutoff for the top eighty proposals. Id.

- Step Five: The CO evaluates whether the offeror proposed fair and reasonable pricing. Id. An offeror who fails to provide such pricing is eliminated from the competition. Id.

The GSA explained that the process would continue until the top eighty proposals (or more, in the case of a tie for the last spot) were identified, at which point evaluations would cease and contracts would be awarded to the offerors of those proposals. Id. Offerors were also informed that the GSA did not intend to hold discussions but would conduct clarifications as necessary. Id. at 402. As explained in the Source Selection Decision Memorandum, the GSA adhered to above process for evaluating proposals and did not hold discussions. Id. at 466-68.

### B. MTV's Proposal

MTV's proposal was the product of a joint venture consisting of Metrica, Inc. ("Metrica") and five other companies. Id. at 495. In its proposal, MTV provided a teaming agreement in which the roles of the joint-venture members were delineated. Id. at 495-507. Of particular import here, the members stated in that agreement that Metrica would perform all of MTV's accounting; MTV's other members would invoice Metrica for any work performed on task orders and then Metrica would invoice the government. Id. at 497. Relatedly, MTV claimed 5500 points for having a certified CAS. Id. at 492. To support its claim to those points, MTV provided (1) a statement in which it reiterated that, per the teaming agreement, Metrica would perform all of MTV's accounting; and (2) a letter from the DCAA in which it confirmed that Metrica's accounting system had been audited and determined adequate. Id. at 1522.

The CO reviewed MTV's proposal in accordance with the procedures noted above. Id. at 1922-35. The CO reached the fourth step of the evaluation process: verifying that the support documents substantiated every claimed point on the Scoring Worksheet. See id. at 1928-33 (validating claimed points); see also id. at 402-03 (describing the evaluation process). At this stage, the CO deducted 5500 points from the total claimed by MTV because it only provided evidence that one member—Metrica—had a certified CAS, and those points were available only if the offeror provided evidence of a certified CAS in the name of each member or the name of the joint venture. Id. at 1928. At the end of his review, the CO concluded that MTV's validated score was 62,700, id. at 3080, which was 5100 points below the cutoff, id. at 471.

On February 14, 2018, the GSA posted an award notice reflecting that the agency selected eighty-one awardees.[2] Id. at 480-88. MTV was not listed as an awardee. Id. MTV promptly requested a debriefing. Id. at 2132. In a March 9, 2018 debriefing letter, the CO explained why he deducted points and how that deduction placed MTV below the award cutoff. Id. at 2134-36.

After it received the debriefing letter, MTV filed a protest with the Government Accountability Office ("GAO"). Id. at 2496. The GAO dismissed the protest on May 22, 2018, because protests concerning the same procurement were pending before this court. Id. at 2526. On July 12, 2018, the GAO dismissed MTV's request for reconsideration of the dismissal decision. Id. at 2527-29.

---

[2] The agency exceeded its stated target of eighty awardees as a result of a four-way tie for the seventy-eighth position. AR 2139.

### C. Procedural History

MTV filed its bid protest with the court on July 27, 2018. In its complaint, MTV alleges that the CO erred by (1) imposing an unstated prohibition on offerors relying on a member's accounting system; (2) deducting points even though MTV proposed using Metrica's certified CAS; and (3) failing to seek clarification on whether MTV would use an acceptable CAS. MTV requests that the court declare that the CO acted unlawfully and permanently enjoin the GSA from proceeding with the current awardee list. MTV also moves to supplement the administrative record with materials pertaining to a prior solicitation. Pursuant to the schedule they proposed, the parties briefed cross-motions for judgment on the administrative record, and the supplementation motion was briefed in accordance with the Rules of the United States Court of Federal Claims ("RCFC"). Oral argument was not requested, and the court deems it unnecessary. The motions are now ripe for adjudication.

## II. CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

### A. Legal Standard

In ruling on motions for judgment on the administrative record pursuant to RCFC 52.1(c), "the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005)). Because the court makes "factual findings . . . from the record evidence," judgment on the administrative record "is properly understood as intending to provide for an expedited trial on the administrative record." Bannum, 404 F.3d at 1356.

The court reviews challenged agency actions pursuant to the standards set forth in the Administrative Procedure Act. 28 U.S.C. § 1491(b)(4) (2012). Specifically, "the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004). Under this standard, the court

> may set aside a procurement action if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." A court reviews a challenge brought on the first ground "to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." "When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations."

Centech Grp., Inc. v. United States, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citations omitted) (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001)); accord Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054,

1058 (Fed. Cir. 2000) ("The arbitrary and capricious standard . . . requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors.").

Procurement officials "are 'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process." Impresa, 238 F.3d at 1332 (quoting Latecoere Int'l, Inc. v. U.S. Dep't of the Navy, 19 F.3d 1342, 1356 (11th Cir. 1994)). Thus, the court's review of a procuring agency's decision is "highly deferential." Advanced Data Concepts, 216 F.3d at 1058; see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) ("The court is not empowered to substitute its judgment for that of the agency."). Furthermore, a "protestor's burden of proving that the award was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law is greater [in negotiated procurements] than in other types of bid protests." Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004). And, when a contract is to be awarded on a "best value" basis, procurement officials have "even greater discretion than if the contract were to have been awarded on the basis of cost alone." Id.

### B. Analysis

The crux of the parties' disagreement is whether, under the terms of the solicitation, a joint venture possesses a certified CAS in its name when one member has such a CAS and is contracted to perform accounting for all of the other members. The resolution of this issue depends on the interpretation of the solicitation provision in which the GSA required that "[o]fferors submitting as a joint venture . . . provide evidence of the system, certification, or clearance being in the name of the joint venture or in the name of every member of the joint venture." AR 375. Specifically, the pertinent inquiry concerns what it means to have a credential "in the name of the joint venture." Id. The court is guided in its analysis of that provision by the "well-settled principles of contract interpretation," which "apply with equal force to the interpretation of government solicitations." Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 708 (2010). Under those principles, the court assesses the "plain and ordinary meaning" of the relevant terms and then considers that meaning in the context of "the solicitation as a whole, interpreting [the solicitation] in a manner that harmonizes and gives reasonable meaning to all of its provisions." Banknote, 365 F.3d at 1353.

The application of those principles leads to only one reasonable interpretation of the contract: the credential must be issued to the joint venture—not one member acting on behalf of the other members. This conclusion follows from a review of the plain meaning and the context of the disputed provision. Turning first to the plain meaning, the parties present two facially plausible definitions for the phrase "in the name of." On the one hand, as advocated for by MTV, the phrase "in the name of the joint venture" could mean "on behalf of the joint venture" such that MTV's subcontracting agreement makes MTV eligible for the points because Metrica is doing the accounting for MTV. In the name of – –, Oxford English Dictionary (3d ed. 2003) ("on behalf of"). Alternatively, as urged by defendant, the phrase "in the name of" could require the credential actually be issued to MTV such that a credential issued only to Metrica would not make MTV eligible for the points. See id. ("[i]ndicating the assigned or stated ownership of a thing").

Given these competing definitions, the context of the disputed provision is critical for ascertaining the meaning of the phrase "in the name of the joint venture." See Banknote, 365 F.3d at 1353. The phrase appears in three consecutive clauses in the solicitation—one addressing relevant experience, another pertaining to past performance, and the last one dealing with certifications. This fact is important because, unless a contrary intent is evident, the same meaning must be afforded to a phrase that is used in different clauses of the solicitation. Bunge Corp. v. Dep't of Agric., AGBCA No. 86-253-1, 91-2 BCA ¶ 24022; cf. Nike, Inc. v. Wal-Mart Stores, Inc., 138 F.3d 1437, 1445 (Fed. Cir. 1998) ("[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning . . . ."[3]).

In the first two solicitation clauses, the GSA described two options for joint-venture offerors to verify their claimed relevant experience or past performance: submitting projects or examples "in the name of the joint venture or . . . in the name of an individual member of the joint venture." AR 375. Pursuant to the principles of contract interpretation, "[a]n interpretation that gives meaning to all parts of the contract is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous." NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004). Because the GSA permitted a joint-venture offeror to receive credit for the projects or past performance of one of its members, the preceding portion of the two clauses allowing joint-venture offerors to submit relevant experience projects or past performance examples "in the name of the joint venture" would be superfluous if the phrase "in the name of the joint venture" meant "on behalf of the joint venture." Indeed, MTV seemingly acknowledges that the GSA used the phrase "in the name of the joint venture" in these two clauses to require that the joint venture—not a subcontracted member acting for the joint venture—performed the relevant work. Consequently, the definition of the phrase "in the name of" urged by defendant is correct for the first two clauses: the entity (i.e., the joint venture or one of its members) itself must actually possess the necessary qualifications.

The question, therefore, is whether the aforementioned definition should also be applied to the phrase as it is used in the third clause. The answer is yes. The first two clauses are structured similarly to the third clause: all three provide that the required documentation must be either (1) "in the name of the joint venture" or (2) "in the name of" one or all of the joint venture's members. Further, there is no evident reason to assign a meaning to the phrase "in the name of the joint venture" in the third clause different from the meaning assigned to the phrase "in the name of the joint venture" in the prior two clauses. It follows that the phrase is afforded the same meaning in all three clauses. As such, there is no reasonable basis to adopt MTV's preferred definition of the phrase "in the name of the joint venture" for the last clause. In short, under the terms of the solicitation, the CAS certification must be possessed by (i.e., issued to) the joint venture or each member of the joint venture—a subcontracting agreement is not sufficient.

MTV's arguments for a different result are not persuasive. First, MTV's focus on the FAR not prohibiting contractors from subcontracting accounting functions is misplaced because

---

[3] The United States Court of Appeals for the Federal Circuit "has generally incorporated the rules of traditional statutory construction into its contract jurisprudence." Travelers Cas. & Sur. Co. of Am. v. United States, 75 Fed. Cl. 696, 708 (2007).

the GSA is not precluded from selecting offerors based on criteria that is more demanding than what is set forth in the FAR. See FAR 15.303(b)(4); see also Fulcra Worldwide, LLC v. United States, 97 Fed. Cl. 523, 535 (2011) (explaining that the solicitation is the best source for determining selection criteria). Second, MTV has not shown any ambiguity in the disputed clause because, for the reasons explained above, it proffers an interpretation that is not reasonable. See Metric Constructors, Inc. v. NASA, 169 F.3d 747, 751 (Fed. Cir. 1999) (explaining that a contract is ambiguous when it is susceptible to more than one reasonable interpretation). Third, the lack of ambiguity means that MTV's reliance on the GSA's actions in prior solicitations has no bearing on the current dispute. See Banknote, 365 F.3d at 1353 (explaining that extrinsic evidence is not appropriate when the solicitation is not ambiguous); see also Travelers Cas., 75 Fed. Cl. at 718 (noting that extrinsic evidence cannot create ambiguity).

The court's analysis, therefore, is guided by the understanding that offerors are only entitled to points for having a certified CAS if that credential is possessed by the joint venture or each member of the joint venture. Because neither MTV nor each member possessed a certified CAS, the CO did not err when he deducted points from the total claimed by MTV for MTV not substantiating the points it claimed for having such a CAS. Furthermore, MTV's lack of success on the merits of its protest precludes it from receiving costs or injunctive relief. See ARxIUM, Inc. v. United States, 136 Fed. Cl. 188, 198 (2018) ("A lack of success on the merits . . . obviously precludes the possibility of an injunction."); Q Integrated Cos. v. United States, 132 Fed. Cl. 638, 642-43 (2017) ("A protestor thus must prevail on the merits at least in part before the court can grant an award of bid preparation and proposal costs.").

### III.  MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

In addition to seeking judgment on the administrative record, MTV moves to supplement the administrative record with documents pertaining to a prior solicitation. The court may supplement the administrative record only when the moving party shows that doing so is necessary for effective judicial review. Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381 (Fed. Cir. 2009). MTV has not met its burden. The documents pertaining to the prior solicitation are not relevant because, as explained above, the lack of ambiguity in the current solicitation means that consideration of extrinsic evidence is not appropriate. Banknote, 365 F.3d at 1353. Thus, the court denies the motion.

### IV. CONCLUSION

For the reasons discussed above, the court **DENIES** MTV's motion for judgment on the administrative record, **DENIES** MTV's motion to supplement the administrative record, and **GRANTS** defendant's cross-motion for judgment on the administrative record. MTV's protest is **DISMISSED.** No costs. The clerk shall enter judgment accordingly.

The court has filed this ruling under seal. The parties shall confer to determine proposed redactions to which all the parties agree. Then, by **no later than Thursday, November 15, 2018,** the parties shall file a joint status report indicating their agreement with the

-9-

proposed redactions, **attaching a copy of those pages of the court's ruling containing proposed redactions, with all proposed redactions clearly indicated**.

    **IT IS SO ORDERED.**

<u>s/ Margaret M. Sweeney</u>
MARGARET M. SWEENEY
Chief Judge
